1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE WESTERN DISTRICT OF MICHIGAN

3    SOUTHERN DIVISION

4

5    UNITED STATES OF AMERICA,

6        Plaintiff,

7    v.                                    CASE NO:  1:14-CR-158

8    CHRISTOPHER TURRYLE BRYANT,

9        Defendant.

10   _____/

11               * * * *

12           SENTENCING HEARING

13               * * * *

14   BEFORE:   THE HONORABLE PAUL L. MALONEY, CHIEF JUDGE
             United States District Judge
15           Kalamazoo, Michigan
             May 22, 2015
16

17   APPEARANCES:

18   APPEARING ON BEHALF OF THE PLAINTIFF:

19       TESSA K. HESSMILLER
         RUSSELL A. KAVALHUNA
20       Assistant United States Attorney
         P.O. Box 208
21       Grand Rapids, Michigan  49501-0208

22
     APPEARING ON BEHALF OF THE DEFENDANT:
23
         SHARON A. TUREK
24       Federal Public Defender
         50 Louis Street, N.W., Suite 300
25       Grand Rapids, Michigan  49503-2633


         KATHLEEN S. THOMAS, U.S. District Court Reporter
         410 West Michigan Avenue, Kalamazoo, Michigan  49007
                         (269)385-3050

2

1          Kalamazoo, Michigan

2          May 22, 2015

3          at approximately 11:03 a.m.

4                    PROCEEDINGS

5          THE COURT:  This is File Number 14-158; The United

6    States of America vs. Christopher Bryant.  This matter is

7    before the Court for sentencing.

8          The Court's file reflects that on December 4, 2014,

9    the defendant was found guilty after a jury trial to

10   allegations contained in five counts; transportation for

11   purposes of prostitution, contrary to 18 U.S. Code 2421; Count

12   Two, sex trafficking by force, fraud, or coercion, contrary to

13   18 U.S. Code 1591(a)(1)(B)(i) and (e) and 18 U.S. Code 1594(a);

14   Count Three, sex trafficking of a minor by force or coercion,

15   contrary to the same subsections; Count Four, sex trafficking

16   of a minor, contrary to 18 U.S. Code 1591(a)(1)(B)(ii) and (c);

17   and in Count Five, a similar count for sex trafficking of a

18   minor.

19         The Court has had the benefit of the presentence

20   investigation report.  There are no objections to the report.

21   The Court has scored this case under the advisory guidelines at

22   Offense Level 42, Criminal History Category VI, which results

23   in an advisory guideline range of 360 months to life.

24         The record should reflect that Assistant United

25   States Attorneys Hessmiller and Kavalhuna are here on behalf of

3

1  government.  Attorney Sharon Turek is here on behalf of the

2  defendant.  The defendant is present in person.

3          Miss Turek, have you had ample opportunity of

4  reviewing the presentence report with your client?

5          MS. TUREK:  I have, your Honor.

6          THE COURT:  Is it true that there are no objections

7  to the report?

8          MS. TUREK:  That is correct.

9          THE COURT:  Do you concur in the scoring?

10          MS. TUREK:  I do.

11          THE COURT:  Thank you.

12          Mr. Bryant, is that true, sir, you've had ample

13  opportunity of reviewing the presentence report with your

14  lawyer?

15          THE DEFENDANT:  Yes, I reviewed it.

16          THE COURT:  All right.  Thank you, sir.

17          Miss Hessmiller, allocution on behalf of the

18  government.

19          MS. HESSMILLER:  Your Honor, as I was thinking about

20  what I wanted to say to the Court today, I considered not

21  saying anything at all.  The trial really spoke for itself, in

22  the government's mind.  The Court had the opportunity to hear

23  from the four victims in this case, three of whom were minors,

24  one of whom was Y.W., the victim of a cycle of violent domestic

25  abuse at the hands of the defendant.  But on the other hand, I

4

1  came to the conclusion that this case requires a statement by

2  the government.

3        This is obviously an incredibly serious set of

4  charges, with an incredibly hefty sentencing range.

5  Statutorily 15 years to life indicates Congress's intent that

6  these crimes be viewed as among the most serious.  The

7  guidelines, of course, are 360 to life, indicating some

8  enhancements that Mr. Bryant has earned through his conduct, as

9  well as his status technically as a career offender although it

10  was not scored that way, because the guidelines came out higher

11  scoring him not as a career offender.

12        Really in considering where on the spectrum

13  Mr. Bryant's conduct falls, between 15 years to life

14  statutorily, and 30 years to life under the guidelines-- I see

15  the Court paging through the presentence report-- does the

16  Court need a reference to the career offender?

17        THE COURT:  No, it's okay.

18        MS. HESSMILLER:  The government took a good look at

19  Mr. Bryant's history before this offense conduct and also

20  during it, and it's hard to refute the conclusion that

21  Mr. Bryant operates his life as a ticking time bomb.  He is

22  defiant.  He is violent.  He does not value human life,

23  particularly women, particularly teenage girls.  He is

24  incorrigible.  He has engaged in threats to people's lives.  He

25  has chosen four victims and manipulated in ways that are

5

1  specific to the weaknesses of those victims.  With Y.W., with

2  whom he shared a child, he threatened her by-- with the threat

3  that he would call Child Protective Services and tell them that

4  she was a prostitute if she did not prostitute for him.  That

5  clearly went to the heart of the matter for her about what she

6  was going through at that time in her life, and that clearly

7  was a tool that he used to manipulate her, followed by rape.

8        He chose S.C. who had a history of drug use, that was

9  a weakness for her.  He plied her with hard drugs, alcohol.

10  She had been in a juvenile home, and when he assaulted her, he

11  choked her and told her he could kill her and no one would

12  know.  Clearly going to the heart of the venerability that

13  S.C., a young troubled girl had, and clearly a tool that

14  Mr. Bryant's used to manipulate her specifically based on her

15  vulnerabilities.

16        B.R. was also a minor for whom money was her point of

17  weakness.  Mr. Bryant picked her up around near a bus station.

18  He told her she could make quick money selling drugs for him or

19  with him.  She got into prostitution with him that way with the

20  hopes of making money.  Obviously apparently we can conclude

21  something she did not have.  When the money issue came to a

22  head between B.R. and Bryant, it resulted in yet another

23  violent fight where B.R. had to fend off Mr. Bryant with a

24  frying pan.

25        K.L.'s venerability, we can conclude came-- included

6

1  money, included drugs, but also in particular, Mr. Bryant honed

2  in on K.L.'s potential weakness by telling her that he wanted

3  to marry her some day.  One can imagine after seeing K.L.

4  testify, hearing her side of the story, seeing her demeanor,

5  hearing a bit about her life, one can imagine that an older man

6  telling her that he wanted to marry her some day would have

7  given her some sort of sense of misplaced self worth.

8          Mr. Bryant also throughout this trial used other

9  women for what he could get out of them.  He used Mariah, who

10  testified in an orange jumpsuit here in this court.  He used

11  her because she had connections to a juvenile home where she

12  knew S.C., whom she recruited for Bryant, with Bryant into

13  their prostitution ring.

14          He used Samantha Stegman, who was testifying during

15  Mr. Bryant's outburst, for her car, which he used to drive the

16  girls around in.  He used Tiffany Cruz, who testified towards

17  the end of trial, by trying to get her to act as a middle

18  manager, and when she refused and stood up for her self and

19  said no to Mr. Bryant, that resulted in a fight that she had to

20  resort to getting a kitchen knife to fend him off, which she

21  testified was stopped only because someone came in and

22  interrupted the fight.

23          Mr. Bryant, who has tatoos of money on his face, has

24  tatoos of-- or has photos of those tatoos on FaceBook that he

25  is commented on, he has FaceBook pictures of himself holding

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

7

1  large sums of cash in hotel rooms, clearly for Mr. Bryant cash

2  is king, and he will take whatever path is necessary to get

3  it.

4         Under the 3553(a) sentencing factors, it does not

5  appear to the government that specific deterrence is

6  realistically on the table.  Really incapacitation of

7  Mr. Bryant is required for Mr. Bryant to stop his long history

8  of continued violent offenses.  More importantly though, just

9  punishment and protection of the community are paramount in

10  this sentencing.  There are various ways to commit sex

11  trafficking, either of a minor or by force, fraud, or coercion,

12  many, many, many of which are less serious than Mr. Bryant

13  chose to commit those offenses here.

14         It is hard to imagine a more manipulative, more

15  violent, more scary offender than Mr. Bryant through the eyes

16  of the victims that he chose.  For those reasons, the

17  government is not suggesting a particular sentence to the

18  Court.  The Court obviously has all of the information at its

19  disposal, but as suggested in our sentencing memorandum, a

20  sentence at the high end of the guidelines, even life, would

21  not be inconsistent with other cases around the country dealing

22  with sex trafficking facts in many ways similar to this case.

23         Thank you, your Honor.

24         THE COURT:  Thank you, counsel.

25         Miss Turek.

8

1        And the Court will state for the record that I've had

2    the benefit of the defendant's sentencing memorandum, which is

3    ECF Document 41.  The government also filed a sentencing

4    memorandum, which is ECF 40.

5        Counsel, you may proceed.

6        MS. TUREK:  Thank you, your Honor.

7        Your Honor, having been on this case and having sat

8    through trial, for much of it I think we heard about the lives

9    of broken people, and I would include my client in that group.

10    They were all young.  They all had issues, whether mental

11    health issues, substance abuse issues, anger issues, as my

12    client has had in the past, as well as mental health issues.

13    Some had trouble with their families, some had trouble with the

14    law.  But they all had issues, and they were all very young.

15        And much of this case, and certainly I believe a

16    basis for the harsh penalties proposed in these cases is the

17    fact that you have someone allegedly praying upon

18    vulnerabilities, and we just heard Miss Hessmiller go through a

19    list of where she thought the vulnerabilities of the women--

20    the young women involved in this case lie.  But I have a

21    different take of this.  I think the young women that were

22    talking here, through their life experience are survivors, and

23    they do what they need to survive, and it may be sad in some

24    cases, and I believe my client has done some things to survive,

25    and that's sad, but I don't-- I think they are calculated, and

9

1  I believe that's true with the young women in this case as

2  well.

3         These young women made a choice, they wanted

4  something out of this arrangement with Mr. Bryant, and when

5  they didn't realize what they thought that they were going to

6  get, they got out of there.  The relationship that my client

7  had with these victims in some cases was a day or two, and I

8  think that some of these young women, all of these young women

9  realized that my client-- that the agreement they entered into

10  wasn't going to be realized so they got out of there.  And I

11  think that goes to the fact that they are survivors, that

12  when-- they are smart enough, when they didn't realize what

13  they thought was going to be the case, they moved on.  This is

14  not a case where-- this is a case where Mr. Bryant may have

15  wanted people to think that he is this big successful pimp.  We

16  certainly saw the video.  But if you look at, really think

17  about the evidence, this really was not a case where Mr. Bryant

18  was successful.  It is true that he flashed money.  Certainly

19  on that video he is bragging.  But that's what I think it is,

20  is bragging, he had no car.  He had no computer,, he borrowed

21  people's phone.  He always had to borrow a car.  He lived with

22  various people, and so to think of Mr. Bryant as this pimp,

23  this leader of this organization, I think is a faulty one.

24         From what I read about pimps, and we heard some of

25  the testimony of the agent talking about how pimps operate, the

10

1  main thing is control, and certainly in this case, Mr. Bryant

2  the testimony is that he had no control.  These women left

3  again as soon as they realized it wasn't going to be what they

4  thought.  They were not going to get the money or whatever else

5  they wanted out of the-- of that proposition, they were out of

6  there, and he had no control.  And in fact, when he did get in

7  fights with some of these women, we heard that on some

8  occasions he got the best of it.  So I think we have to look at

9  that and put as outrageous as some of the conduct that we heard

10  may be I think we have to put it in that context, and do we

11  really need to put-- sentence Mr. Bryant to 30 or 40 years in

12  prison?  I think-- I don't think we do.  I think that a long

13  harsh sentence is required here, but I don't think we need to

14  throw his life-- throw him in prison and leave him there.

15          I think that Mr. Bryant has some issues.  It's clear

16  to me that he has some issues.  The presentence report

17  indicates that he has suffered from some mental illness.  I

18  think one of the recommendations that I would ask the Court to

19  make to the BOP is that Mr. Bryant be evaluated to determine

20  exactly what are his mental health issues.

21          The presentence report also indicates ADD, and I

22  could certainly attest that Mr. Bryant has had trouble

23  concentrating.  It is sometimes very difficult to communicate

24  with him because he is on one subject and then on the other,

25  it's hard to keep him focused at times.  But I think with

11

1   therapy, certainly anger management, I think that would be

2   helpful, and I think that would be a more positive way to go

3   instead of locking him up for the rest of his life.  You know,

4   through some of the testimony, it's clear that it was clear

5   that you know, Mr. Bryant may have had some ideas about how he

6   wanted his operation to run, but it's clear to me that this was

7   not a well tuned machine, that he had no control over these

8   women.  And as I've said, control for a pimp is the key.  But

9   that was not present here, and I believe that's because

10  Mr. Bryant, although he may have made promises to some of these

11   girls, that he never had any real control, he never could

12   because these women were again not so much victims as

13   survivors, and they made choices, certainly they were young,

14   but some almost of age some of these girls were within months

15   of being-- of legal age.

16          So again, I would ask this Court, I believe a

17   sentence of 30 years or less would be sufficient to punish

18   Mr. Bryant, to provide him with much needed therapy, and would

19   be sufficient punishment in this case.

20          In looking at Mr. Bryant's background, his criminal

21   history in particular, it's clear he says things, he mouths

22   off, he has had there were a number of domestic violence

23   situations, but the injuries were not as severe as one would

24   think, if you believe everything the government is trying to

25   say about Mr. Bryant.  Certainly he needs help.  Certainly he

12

1  probably needs medication, would be my guess, but I think there

2  are ways that we could punish Mr. Bryant and also provide him

3  avenues of treatment without locking him up for the rest of his

4  life.  So I would ask your Honor to consider a sentence of no

5  more than 30 years in this case.

6      Thank you.

7      THE COURT:  Thank you, counsel.

8      Mr. Bryant, is there anything you wish to say on your

9  own behalf, sir?  You may proceed as you wish.

10      THE DEFENDANT:  Yeah, I got a lot to say.  For the

11  simple fact of the matter, I feel like a lot of the stories the

12  females fabricated or they was told what to say.  There is a

13  lot of inconsistencies.  A lot of stuff wasn't true.  I mean,

14  I'm the type of person I take responsibility, if I do

15  something, I take responsibility for what I do, I'm wrong for

16  it.  But if you take something I do and add things and stretch

17  it out and mix it up and make it seem like worse than what it

18  is, I can't take responsibility for that, because the whole

19  thing is fabricated.

20      A lot of the females, a lot of the stories, when I

21  read my paperwork is made up stuff.  I feel like they got told

22  what to say, but I can't do nothing.  I'm in chains.  I'm

23  locked in.  I can't even talk half the time through my trial, I

24  couldn't say nothing.  So I mean it is what it is.  I can't do

25  nothing.

13

1    But I mean, am I sorry?  No, I'm not sorry.  For

2    what?  I don't feel like I did anything wrong.  I feel that by

3    me having an idea, a mindset to do something, far as what I

4    attempted to do, I mean, yes, I'm wrong for even thinking about

5    it, but as far as doing something, I didn't do anything, see

6    what I'm saying.  And for the government to take the whole

7    situation and blow it up to this some big thing, that's

8    ridiculous.  That don't make no sense.  But I mean everybody

9    got to get paid, everybody got to do-- everybody want to be the

10   best at what they do, whether it being a police officer or

11   being a doctor or a lawyer, or whether it's being a criminal,

12   everybody want to be the best at what they do.  And some people

13   that in positions, as far as lawyers and police and doctors and

14   stuff like that, they will cut corners to do they job.  If they

15   feel that okay, this is right and this is wrong, and they can't

16   prove it, they going to try their best way to make that seem

17   like they right.  You see what I'm saying, but I'm not sorry.

18   I don't feel like I did anything wrong.

19       That's it.

20       THE COURT:  Thank you, sir.

21       It is the Court's duty to impose a sentence

22   sufficient, but not greater than necessary to comply with the

23   purposes of sentencing set forth in 18 U.S. Code 3553(a).

24       The Court recognizes the guidelines are advisory to

25   the Court, but I have taken the guidelines into account as an

14

1  initial benchmark or starting point when sentencing in this

2  case.

3      THE DEFENDANT:  Excuse me.  Excuse me.

4      THE COURT:  I recognize I must make an individualized

5  assessment based on the facts presented.  The guideline range

6  is one of the array of factors warranting consideration.

7      I also fully recognize my discretion in determining

8  an appropriate sentence as recognized by the United States

9  Supreme Court in its decisions in Booker, Kimbrough, Rita,

10  Gall, Spears, and the recent Sixth Circuit case of

11  Herrera-Zuniga.

12      Pursuant to Tapia  vs. The United States, at 131

13  Supreme Court 2382, the Court recognizes that imprisonment is

14  not suitable for the purpose of promoting correction and

15  rehabilitation.

16      I have considered all of the defendant's arguments in

17  support of his request for a lower sentence.

18      The 3553 factors are the nature and circumstances of

19  the offense, and the history and characteristics of the

20  defendant.  The sentence must reflect the seriousness of the

21  offense; promote respect for law; provide just punishment for

22  the offense; afford adequate deterrence to criminal conduct;

23  protect the public from further crimes of the defendant;

24  provide the defendant with needed medical, educational, and/or

25  correctional treatment; the need to avoid unwarranted

15

1    sentencing disparity among similarly situated defendants; any

2    guideline policy statements that pertain; and the kinds of

3    sentences available to the Court.

4         THE DEFENDANT:  I have a question though.

5         THE COURT:  No, you need to be quiet now,

6    Mr. Bryant.  Thank you.

7         THE DEFENDANT:  Okay.  But when am I allowed to ask

8    my question, when you done?

9         THE COURT:  What question do you have, sir?

10        THE DEFENDANT:  Far as the appeal, how that works?

11   Am I allowed to appeal any of this?

12        THE COURT:  Absolutely.  We will get to that at the

13   end.  Okay.

14        THE DEFENDANT:  Okay.  Okay.

15        THE COURT:  The Court recommends to the Bureau of

16   Prisons that the defendant receive a mental health evaluation

17   and any treatment and counseling deemed necessary by the mental

18   health professionals of the Bureau of Prisons.

19        Mr. Bryant would also benefit from

20   vocational/educational opportunities, as well as substance

21   abuse treatment and counseling.

22        The best window to understand what was going on in

23   this case is the tape that was played during the course of the

24   trial in this case in which Mr. Bryant brags that he is running

25   a prostitution operation, etcetera.

16

1          Mr. Bryant, in the Court's judgment, shows no

2   evidence of reformation potential.  He has had multiple prior

3   assault related convictions.  None, no contact with prior

4   courts on the state level have managed to reach Mr. Bryant in

5   terms of a change of his behavior.  He has multiple prior

6   assault convictions.  He is a man who is totally self absorbed,

7   it's all about him.  He is narcissistic to the extreme.  And in

8   the Court's judgment, protection of the public from further

9   crimes of this defendant is a major factor for the Court to

10  consider, because I believe, based on Mr. Bryant's position as

11  he finds himself right now, is a major threat to re-offend.  He

12  is totally unapologetic, which the most recent evidence of that

13  was his allocution statement that he just made, in that he

14  didn't do anything wrong.  He has an inability to conform his

15  conduct to the requirements of the law.  And as I said before,

16  I believe he has a major-- is a major threat to re-offend and

17  to victimize other female human beings that he comes in contact

18  with in the future.

19          He has a propensity for violence.  Several of the

20  victims in this case were minors under the law, and obviously

21  they made decisions for themselves, whether they be because

22  they needed money or they were drug addled, or whatever, but

23  the law provides that if you are a minor, you are not in a

24  position to make those decisions for yourself, and at least in

25  two counts of this case, minors-- three counts of this case,

17

1  minors were involved.

2      I think a substantial prison sentence is necessary in

3  this case.  These offenses carry, in the case of all counts but

4  Count One, life imprisonment, which is a clear indication that

5  the Congress of the United States and the executive branch of

6  government believes that if you engage in this sort of

7  criminality that a significant punishment is necessary.

8      General deterrence of others who might contemplate

9  similar activity is also major concern for this Court.  I'm not

10  sure any sentence will deter Mr. Bryant, other than the fact

11  that if he is locked up in federal prison for a significant

12  period of time, he won't be victimizing other females in the

13  future.

14      The Court intends to give a guideline sentence in

15  this case.  I recognize Miss Turek's request for a sentence at

16  the low end of the guidelines, but in the Court's judgment,

17  that is not sufficient punishment for the constellation of

18  offenses which are attendant to this case.

19      Accordingly, it's the judgment of the Court the

20  defendant is committed to the custody of the Bureau of Prisons

21  to be imprisoned for a term of 120 months on Counts One, Four

22  and Five; and 360 months on Counts Two and Three.  Counts One,

23  Four and Five are to be served concurrently with one another,

24  and Counts Two and Three are to be served concurrently with

25  each other also.  But the sentence for Counts Two and Three are

18

1  consecutive to the terms imposed on Counts One, Four and Five,

2  for a total incarceration period of 480 months.

3          Upon release from imprisonment, the defendant shall

4  be placed on supervised release for a term of three years on

5  Count One and five years on Counts Two through Five, all counts

6  to run concurrently.

7          Within 72 hours of release from custody of the Bureau

8  of Prisons, the defendant shall report in person to the

9  probation office in the district to which he is released.

10          While on supervised release, the defendant shall

11  comply with the mandatory and standard conditions of

12  supervision, including DNA collection, drug testing, sex

13  offender registration.

14          He is not to possess any firearms, destructive

15  devices, or dangerous weapons.

16          Additionally, the defendant shall comply with the

17  following special conditions of supervision:

18          Participate in a program of testing and treatment for

19  substance abuse as directed by his probation officer until such

20  time as he is released from the program by his probation

21  officer, and shall pay at least a portion of the cost according

22  to his ability to pay, as determined by his probation officer.

23          Refrain from all use of alcoholic beverages.

24          Participate in a program of mental health treatment

25  as directed by his probation officer until such time as he is

19

1   released from the program by his probation officer, and shall

2   pay at least a portion of the cost according to his ability to

3   pay, as determined by his probation officer.

4         Provide his probation officer with access to any

5   requested financial information.

6         Maintain full-time employment as approved by his

7   probation officer.

8         Earn his high school diploma or GED, if he has not

9   otherwise obtained those.

10        His residence and employment be shall be pre-approved

11   by his probation officer.

12        He shall not be employed at any position, or

13   participate in any volunteer activity that involves contact

14   with children under the age of 18, except approved in advance

15   by his probation officer.

16        He shall not have any contact with the victims in

17   this case, this includes any physical, visual, written, or

18   telephonic contact.

19        Additionally, the defendant shall not cause or

20   encourage anyone else to have contact with the victims.

21        He shall abide by any curfew restrictions, as

22   directed by his probation officer, and shall not be the

23   possessor or primary user of any cellular telephone or other

24   electronic device without the prior permission of his probation

25   officer.

20

1          If he is given permission to use or possess a cell

2  phone, the defendant must provide the number to his probation

3  officer, and the telephone or other electronic die advise shall

4  be maintained in his name or in a name approved in advance by

5  his probation officer.  The defendant shall provide his

6  probation officer with the monthly bill for the electronic

7  device.

8          He shall comply with the sex offender registration

9  requirements of the State of Michigan, and other-- any other

10  state in which he may reside.

11          The $100 special assessment is assessed on each count

12  for a total of $500.

13          The Court finds the defendant does not have the

14  ability to pay a fine.  Accordingly, the fine is waived in this

15  case.

16          Miss Turek, any other recommendations to the Bureau

17  of Prisons that you would like?

18          MS. TUREK:  No, your Honor.

19          THE COURT:  Any legal objection to the sentence

20  imposed?

21          MS. TUREK:  No, your Honor.

22          THE COURT:  Are you satisfied I've addressed all of

23  arguments on the record?

24          MS. TUREK:  I am.

25          THE COURT:  Miss Hessmiller, any legal objection to

21

1   the sentence imposed?

2          MS. HESSMILLER:  No, your Honor.

3          THE COURT:  Are there any counts to be dismissed?

4          MS. HESSMILLER:  The forfeiture allegations, your

5   Honor.  There are two forfeiture allegations, and the

6   government moves to dismiss most of those.

7          THE COURT:  The forfeiture allegations are dismissed

8   on the motion of the government.

9          Mr. Bryant, I advise you, sir, you have a right to

10  appeal your conviction and sentence to the Court of Appeals for

11  the Sixth Circuit.

12          You have the right to apply for leave to appeal in

13  forma pauperis if you are poor.  If you wish to do so, with a

14  few exceptions, you need to file the appropriate documents

15  within 14 days of the entry of the judgment in this case.

16          Your attorney will prepare and file notice of appeal

17  upon your request.

18          THE DEFENDANT:  Right.

19          THE COURT:  Counsel is advised of her obligation to

20  advise her client of his appellate rights.  Should your client

21  wish to pursue an appeal, the forms for filing an appeal can be

22  found on this Court's website--

23          THE DEFENDANT:  Yes.

24          THE COURT:  --or the Court of Appeals' website.

25          Should your client choose to appeal, you are

22

1   obligated to continue representation of him until such time as

2   you are specifically relieved by the Court of Appeals.

3          Mr. Bryant, did that advise you of your appellate

4   rights, sir?  Do you understand?

5          THE DEFENDANT:  No, I don't.

6          THE COURT:  You don't understand?

7          THE DEFENDANT:  No, you was going too fast.

8          THE COURT:  I'm sorry, I was talking too fast.

9          THE DEFENDANT:  Trying to catch up.

10          THE COURT:  You have a right to appeal your sentence

11   and conviction to the next highest court, which is the Court of

12   Appeals.

13          Your lawyer will file a notice of appeal for you

14   which will preserve your right to appeal.  Okay.

15          THE DEFENDANT:  Okay.  So what if I don't want my

16   lawyer to file it?

17          THE COURT:  If you don't--  You don't want to appeal

18   or don't want Miss Turek to represent you?

19          THE DEFENDANT:  Yes, I want to appeal.  I don't want

20   Miss Turek to represent me.

21          THE COURT:  Okay.  Well, Miss Turek just heard that,

22   so my guess is that Miss Turek will be filing a motion before

23   the Court of Appeals to relieve her of representation of you

24   and ask the Court of Appeals to appoint another lawyer for

25   you.

23

1        THE DEFENDANT:  Okay.

2        THE COURT:  Okay.

3        THE DEFENDANT:  Yes.

4        THE COURT:  Do you have any other questions?

5        THE DEFENDANT:  No, that's it.

6        THE COURT:  All right.  Defendant is remanded to the

7   custody of the marshal for execution of sentence.

8        COURT CLERK:  All rise, please.

9        Court is adjourned.

10        THE DEFENDANT:  Thank you, all.  Have a good day.

11   Enjoy the weather.

12        Good job.  You looking good, too, Tessa.  Don't let--

13        (At 11:40 a.m., proceedings were concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

24

1

2

3

4                          REPORTER'S CERTIFICATE

5

6

7          I, Kathleen S. Thomas, Official Court Reporter for

8     the United States District Court for the Western District

9     of Michigan, appointed pursuant to the provisions of Title

10    28, United States Code, Section 753, do hereby certify

11    that the foregoing is a true and correct transcript of

12    proceedings had in the within-entitled and numbered cause

13    on the date hereinbefore set forth; and I do further

14    certify that the foregoing transcript has been prepared by

15    me or under my direction.

16

17

18               /s/

19         _____
           Kathleen S. Thomas, CSR-1300, RPR
           U.S. District Court Reporter
20         410 West Michigan
           Kalamazoo, Michigan   49007
21

22

23

24

25


                  KATHLEEN S. THOMAS, U.S. District Court Reporter
                 410 West Michigan Avenue, Kalamazoo, Michigan  49007
                                   (269)385-3050